## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:23-CV-61267-WILLIAMS/AUGUSTIN-BIRCH

**SANDRA CALDWELL and NANCY NEWBOLD,**

      **Plaintiffs,**

**v.**

**SEYCHELLES LIMITED, LLC,** *et al.*,

      **Defendants.**

_____/

### REPORT AND RECOMMENDATION ON DEFENDANT SEYCHELLES LIMITED, LLC's MOTIONS TO DISMISS [DE 15]; [DE 28]

This cause comes before the Court on Defendant Seychelles Limited, LLC's Motions to Dismiss. DE 15; DE 28. The Honorable Kathleen M. Williams, United States District Judge, referred both Motions to the undersigned United States Magistrate Judge for a report and recommendation. DE 16; DE 29. Plaintiffs Sandra Caldwell and Nancy Newbold have filed a response to Defendant Seychelles' Motion to Dismiss, DE 25, and Defendant Seychelles has filed a reply. DE 27. The Court permitted Plaintiffs to file a surresponse to Defendant Seychelles' reply, DE 33, and Plaintiffs filed a surresponse. DE 37. Defendant Tammy Fisher has filed a response to Defendant Seychelles' Motion to Dismiss, DE 30, and Defendant Seychelles has filed a reply. DE 31. The Court has carefully considered the Motions, the record, and is otherwise fully advised. For the reasons set forth below, the Court **RECOMMENDS** for Defendant Seychelles' Motions to be **GRANTED**.

## I. Background

For a family vacation, Defendant Tammy Fisher chartered a Vessel called "Triple Net" and its Tender named "T/T Triple Net"[1] from Defendant Seychelles Limited, LLC, and Defendant Fisher invited Plaintiffs Sandra Caldwell and Nancy Newbold to tag along. DE 1 ¶¶ 18–19. During the charter, the Vessel was captained by Hayden Smith, and Robert Muller served as one of the crew members of the Vessel. *Id.* ¶¶ 21–22. While the Vessel was anchored near Key Biscayne, Florida, Defendant Fisher and Plaintiffs were transported to Key Biscayne aboard the Tender driven by Mr. Muller. *Id.* ¶¶ 24–28. On the way back to the Vessel from Key Biscayne, Mr. Muller was driving the Tender at, as Plaintiffs allege, an unsafe speed when a large yacht created a wake in front of the Tender. *Id.* ¶¶ 30–32. Although Mr. Muller allegedly had time to reduce the Tender's speed before crossing the wake, he did not do so, and the Tender slammed into the wake, causing Plaintiffs to be violently launched into the air before landing back on the deck and seating of the Tender. *Id.* ¶¶ 33–34. As a result of this incident, Plaintiffs aver they suffered serious bodily injuries. *Id.* ¶¶ 35–38. Asserting that Defendant Fisher, Defendant Seychelles, and the *in rem* Defendants Triple Net and T/T Triple Net (collectively, the "*in rem* Defendants") were all jointly and severally liable for Plaintiffs' injuries under general maritime law, *id.* ¶ 39, Plaintiffs filed a six-count Complaint. DE 1.

In their Complaint, Plaintiffs individually asserted a negligence claim against each of the Defendants. Operating under the allegation that Defendant Seychelles time-chartered the Vessel to Defendant Fisher, Plaintiff Caldwell alleged that Defendant Seychelles was liable for her injuries in Count 1 and that the *in rem* Defendants were liable for her injuries in Count 2. *Id.* ¶¶ 45–63. Likewise, Plaintiff Newbold alleged that Defendant Seychelles was liable for her injuries

---

[1] A tender is generally a smaller boat used to service or support a larger boat.

in Count 3 and that the *in rem* Defendants were liable for her injuries in Count 4. *Id.* ¶¶ 64–82. Alternatively, assuming *arguendo* that Defendant Fisher bareboat chartered the Vessel, Plaintiff Caldwell alleged that Defendant Fisher was liable for her injuries in Count 5, *id.* ¶¶ 83–92, and Plaintiff Newbold asserted that Defendant Fisher was liable for her injuries in Count 6. *Id.* ¶¶ 93–102.

In response to the Complaint, Defendant Seychelles filed a Motion to Dismiss for Failure to State a Claim. DE 15. For her response, Defendant Fisher filed an answer, which included two cross-claims against Defendant Seychelles. DE 19. Specifically, Defendant Fisher alleged that the charter agreement between her and Defendant Seychelles was a time-charter, not a bareboat charter. *Id.* at 11 ¶ 8. Therefore, Defendant Fisher denied liability for Plaintiffs' injuries. However, if she were to be found liable, Defendant Fisher raised a common law indemnity cross-claim and a contribution cross-claim against Defendant Seychelles. *Id.* at 12–14. Defendant Seychelles responded to Defendant Fisher's cross-claims with a Motion to Dismiss for Failure to State a Claim. DE 28. Each of Defendant Seychelles' Motions to Dismiss will be examined in turn.

## II. Defendant Seychelles' Motion to Dismiss Plaintiffs' Complaint

In its Motion to Dismiss Plaintiffs' Complaint, Defendant Seychelles contends that Counts 1 and 3 against itself must be dismissed because Defendant Fisher's charter of the Vessel was a bareboat charter, as opposed to the time charter Plaintiffs alleged as a possibility in their Complaint. DE 15 at 7–16. Additionally, Defendant Seychelles, as the owner of the Vessel and its Tender, argues that Counts 2 and 4 against the *in rem* Defendants must be dismissed for lack of subject matter jurisdiction because Plaintiffs failed to allege that the Vessel or its Tender are within this district or will be while the action is pending. *Id.* at 16–17. Both of these arguments have merit.

**A. Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12 empowers a court to dismiss a pleading for, inter alia, lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6). "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms": facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "'Facial attacks' on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.*

Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555–56 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a Rule 12(b)(6) motion to dismiss, courts must accept a pleading's factual allegations as true. *See id.* at 679. However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are

contradicted by facts disclosed by a document appended to the complaint." (internal citation omitted)). Moreover, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see also Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1316 (S.D. Fla. 2016) ("If the documents contradict the general and conclusory allegations of the pleading, then the documents govern."); *Staggers v. Int'l Longshoremen's Ass'n*, No. 20-CV-24202, 2021 WL 293209, at *4 (S.D. Fla. Jan. 28, 2021) (finding contradictory exhibit controlled over factual allegation).

### B. Bareboat vs. Time Charter

Under a bareboat charter, which is sometimes referred to as a demise, "full possession and control of the vessel are delivered up to the charterer for a period of time." *Reed v. S.S. Yaka*, 373 U.S. 410, 412 (1963) (footnotes omitted); *see also Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993) ("Under a bareboat or demise charter . . . full possession and control of the vessel is transferred to the charterer. . . . Under a bareboat or demise charter the vessel is transferred without crew, provisions, fuel or supplies, i.e. 'bareboat'; and when, and if, the charterer operates the vessel he must supply also such essential operating expenses."). "It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner pro hac vice." *Reed*, 373 U.S. at 412 (footnotes omitted). Therefore, "barring explicit statutory exemption, the bareboat charterer is personally liable" for injuries occurring during the charter. *See id.*; *see also Walker*, 995 F.2d at 81 ("Because the charter's personnel operate and man the vessel during a demise charter, the charterer has liability for any and all casualties resulting from such operation and therefore provides insurance for such liability.").

On the other hand, a time charter does not deliver total control of a vessel to the charterer. *Gatewood v. Atl. Sounding Co.*, No. 3:06-CV-41J32HTS, 2007 WL 1526656, at *6 (M.D. Fla. May 23, 2007) (citing *Reed*, 373 U.S. at 412; *Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962)); *see also Jolly v. Hoegh Autoliners Shipping AS*, 546 F. Supp. 3d 1105, 1110 n.4 (M.D. Fla. 2021) ("A time charter does not involve transfer of possession or control of a vessel . . . ."); *Walker*, 995 F.2d at 81 ("In a time charter the vessel owner retains possession and control of the vessel; provides whatever crew is needed and is responsible for normal operating expenses."). As such, under a time charter, the charterer "assumes no liability for negligence of the crew . . . ." *Hayes v. Wilh Wilhelmsen Enters., Ltd.*, 818 F.2d 1557, 1559 (11th Cir. 1987); *see also Jolly*, 546 F. Supp. 3d at 1110 n. 4 (noting owner of vessel remains responsible for vessel under time charter).

### C. Counts 1 and 3 of the Complaint Should be Dismissed

Defendant Seychelles maintains that Defendant Fisher bareboat chartered the Vessel, meaning it cannot be liable for any negligence claim stemming from the alleged incident. DE 15 at 7–8. In particular, Defendant Seychelles highlights the "Recreational Bareboat Charter Agreement" (hereafter, "Charter Agreement") attached to Plaintiffs' Complaint, wherein it states:

> This Agreement constitutes a demise charter of the Vessel to the CHARTERER under the maritime law of the United States. Therefore, the OWNER shall deliver and, during the Charter Period, the CHARTERER shall accept, full possession, command, and navigation of the Vessel. In addition, the CHARTERER shall furnish its own crew and pay expenses and operating costs as provided in Clause 8.

DE 1-5 at 3. The Charter Agreement also provides that Defendant Fisher was the "Charterer" and that Defendant Seychelles was the "Owner" of the Vessel. *Id.* at 2.

In response to Defendant Seychelles' Motion, Plaintiffs first argue that the Charter Agreement attached to their Complaint cannot provide a basis to dismiss their claims against Defendant Seychelles because the copy attached to the Complaint was not signed by all parties.

DE 25 at 2. However, Defendant Seychelles attached a fully executed form of the Charter Agreement to its reply, DE 27-1, thereby mooting Plaintiffs' argument. But because the fully executed version of the Charter Agreement was attached for the first time to Defendant Seychelles' reply, Plaintiffs were given an opportunity to file a surresponse. DE 33.

With their surresponse, the Court was mainly interested in seeing if Plaintiffs would dispute the authenticity of the version of the Charter Agreement attached to Defendant Seychelles' reply, and Plaintiffs raised no argument in their lately filed surresponse that it was not authentic,[2] outside of calling it "an allegedly executed version of the charter agreement . . . ." DE 37 at 1. The Court does not find this sufficient to dispute the authenticity of the fully executed Charter Agreement attached to Defendant Seychelles' reply; therefore, the Court will consider it below. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged.").

Secondly, Plaintiffs also question whether the Charter Agreement was a bareboat charter in their response to Defendant Seychelles' Motion to Dismiss, since, as they claim, it contains the following clause that is inconsistent with a typical bareboat charter:

> C. The OWNER shall ensure that the CHARTERER is covered throughout the Charter as an "additional assured" or "covered person" under the OWNER's insurance policy. Except to the extent that either the CHARTERER or any of the CHARTERER's guests has acted in any way as to void or limit coverage under the OWNER's insurance policy, the CHARTERER will not be liable, with respect to any one accident or occurrence, for any damage to the Vessel or to any third party caused by the negligence or willful act of the CHARTERER or the CHARTERER's guests.

---

[2] Plaintiffs were originally given until January 11, 2024, to file their surresponse, DE 33, but Plaintiffs requested and received an extension until January 18, 2024, to file their surresponse. DE 34; DE 35. Plaintiffs filed their surresponse one day late on January 19, 2024. *See* DE 37.

DE 25 at 3 (quoting DE 1-5 at 7). Based on this clause, Plaintiffs argue that Defendant Seychelles'

retention of "responsibility for insuring the vessel during the charter . . . suggests the charter may

have been something other than a demise charter." *Id.* at 3–4.

However, Defendant Seychelles' provision of insurance during the charter does not support

Plaintiffs' suggestion that the Charter Agreement established a time charter. As previously stated,

the hallmark of a bareboat charter is deliverance of "full possession and control of the vessel" by

the owner to the charterer.  *Reed*, 373 U.S. at 412; *see Walker*, 995 F.2d at 81 ("Under a bareboat

or demise charter the vessel is transferred without crew, provisions, fuel or supplies, i.e. 'bareboat'

. . . ."). Because this definition of a bareboat charter includes no consideration of who insures a

vessel during a charter, and because whomever insures a vessel seemingly has no bearing on who

has full control and possession of a vessel, this clause cannot support a claim that the Charter

Agreement was not for a bareboat charter.[3]

Moving on to examining the factual allegations contained within Plaintiffs' Complaint, the

Court finds that they have failed to state a plausible negligence claim against Defendant

Seychelles. In order for Plaintiffs to allege a plausible negligence claim against Defendant

Seychelles, Plaintiffs needed to plead factual allegations to allow the Court to reasonably infer that

the charter was a time charter, which would mean Defendant Seychelles was liable for any

negligence of the crew. *See Johnson v. Del Monte Fresh Produce Co.*, No. 09-22425-CIV, 2010

WL 11606066, at *6 (S.D. Fla. Dec. 8, 2010) ("Under the traditional role of the time-charter . . . .

The vessel owner . . . remains responsible for the . . . negligence of the crew . . . . (quoting *Becker*

*v. Tidewater*, 586 F.3d 358, 373 (5th Cir. 2009))); *Jolly*, 546 F. Supp. 3d. at 1110 n.4 (noting that

---

[3] Plaintiffs also do not provide any authorities that stand for the proposition that the provision of some insurance coverage by the owner of a vessel transforms the type of charter for that vessel.

under a time charter "the owner of the vessel fully equips and maintains the vessel and retains responsibility for it").

While Plaintiffs do plead that Defendant Seychelles employed the crew of the vessel and retained control over it, *e.g.*, DE 1 ¶¶ 46, 47, 65, 66 (alleging that Charter Agreement was for a time charter and that Defendant Seychelles employed and retained control over the crew of the Vessel), their allegations are conclusory and flatly contradicted by the Charter Agreement. *See* DE 27-1 at 2 ("[T]he CHARTERER shall furnish its own crew and pay expenses and operating costs as provided in Clause 8."); *id.* ("If the CHARTERER chooses to utilize the services of a captain, the CHARTERER represents and warrants that such captain will be qualified and, if necessary, licensed, provided that the *CHARTERER shall remain responsible for the operation and management of the Vessel*." (emphasis added)); *id.* at 3 ("The CHARTERER shall be responsible for the operating costs, including . . . any other payment as provided in Clause 30, for the entire Charter Period, for the CHARTERER, the CHARTERER's guests, *and any captain and crew retained by the CHARTERER*." (emphasis added)). Therefore, the Charter Agreement controls over Plaintiffs' conclusory allegations. *See Griffin Indus., Inc.*, 496 F.3d at 1206 ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.");[4] *Staggers*, 2021 WL 293209, at *2 ("Rather, '[w]here exhibits are submitted that contradict the alleged facts, the exhibits control, despite [courts'] construction of facts in favor of their truth.'" (quoting *Celestine v. Capital One*, 741 F. App'x 712, 713 (11th Cir. 2018))).

---

[4] The Eleventh Circuit has adopted as binding precedent all decisions of the Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

As such, Plaintiffs have failed to sufficiently allege that Defendant Seychelles retained responsibility for the crew of the Vessel during the Charter, which in turn means the Court cannot reasonably infer that the charter was a time charter for which Defendant Seychelles would be responsible for any negligence of the crew. Accordingly, Plaintiffs have failed to state a plausible negligence claim against Defendant Seychelles, and Counts 1 and 3 of the Complaint should be dismissed.

Lastly, to be clear, the Court has not considered the "Vessel Services Agreement" (hereafter, "Services Agreement") attached to Defendant Seychelles' Motion to Dismiss, DE 15-2, when making this recommendation. Generally, when ruling on a Rule 12(b)(6) motion to dismiss, a court is confined to a pleading and any documents attached to that pleading. *SIG, Inc. v. AT & T Digit. Life, Inc.*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013) (citing *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)). As a limited exception to this rule, a court can review an extrinsic document not attached to a complaint only when the document was referred to by the plaintiff in the complaint, is central to the plaintiff's claim, and the contents of the document are not in dispute. *Id.* (citing *Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284). Defendant Seychelles contends that this limited exception applies here, arguing that the Services Agreement was referenced by Plaintiffs in their Complaint because: (1) Plaintiffs make allegations referencing the employment of a captain and the crew, and (2) Clause 6.A and 6.B of the Charter Agreement make reference to the employment of a captain and crew. DE 15 at 5, 15; DE 27 at 2–3. However, neither Plaintiffs' allegations nor Clause 6.A or 6.B of the Charter Agreement make any explicit or implied reference to the actual Services Agreement document. Therefore, the Court did not consider the Services Agreement when making its recommendation.

**D. Counts 2 and 4 Should be Dismissed Without Prejudice for Lack of Subject Matter Jurisdiction over the *in rem* Defendants**

"A complaint for civil action *in rem* is subject to the particularity requirements found in Supplemental Rules for Certain Admiralty and Maritime Claims C(2) . . . and Rule E(2) of the Federal Rule of Civil Procedure for Certain Admiralty and Maritime Claims . . . ." *Anderson v. M/Y Dream*, No. 21-60863-CIV, 2021 WL 2435455, at *1 (S.D. Fla. May 12, 2021). Supplemental Rule C(2) provides that for an *in rem* action, a complaint must: "(a) be verified; (b) describe with reasonable particularity the property that is the subject of the action; and (c) state that the property is within the district or will be within the district while the action is pending."

Looking at the Complaint and accepting all of the allegations as true, the Court finds that Plaintiffs have not sufficiently alleged subject matter jurisdiction over the *in rem* Defendants to survive Defendant Seychelles' facial attack because they fail to state that either the Vessel or its Tender are within the Southern District or will be while the action is pending. In fact, Plaintiffs appear to acknowledge this deficiency, since they request for the Clerk of Court to issue a warrant of arrest for the *in rem* Defendants to bring them within the Court's jurisdiction. *See, e.g.*, DE 1 ¶ 63b.

In their response to Defendant Seychelles' Motion to Dismiss, Plaintiffs recognize their omission and assert they can remedy the deficiency by amending their pleading. DE 25 at 4. In particular, Plaintiffs note that in the Joint Scheduling Report, DE 24,[5] the parties proposed a February 2, 2024 deadline to amend pleadings and add additional parties, and Plaintiffs request until then to learn the whereabouts of the Vessel and its Tender and to subsequently seek permission to file an amended complaint. DE 25 at 5. Because Plaintiffs can potentially remedy

---

[5] A scheduling order has since been entered in the case, and it provides an April 5, 2024 deadline to amend pleadings. DE 36 at 2.

this defect in their pleading, Plaintiffs' Counts 2 and 4 should be dismissed without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.").

### III. Defendant Seychelles' Motion to Dismiss Defendant Fisher's Cross-claims

In her cross-claims against Defendant Seychelles, Defendant Fisher first recounted the allegations in Plaintiffs' Complaint, which included the allegation that she time chartered the vessel. DE 19 at 10–12. Defendant Fisher then raised a common law indemnity cross-claim against Defendant Seychelles. *Id.* at 13 ¶ 20. While she denied liability for the accident, Defendant Fisher asserted that if she were somehow liable, she should be able to recover against Defendant Seychelles or be indemnified by it. *Id.* at 13 ¶¶ 24, 26. Lastly, Defendant Fisher raised a contribution claim against Defendant Seychelles, which again argued that she was not liable for the accident. *Id.* at 14 ¶ 30. But, if she were to be found liable, Defendant Fisher alleged an entitlement to contribution from Defendant Seychelles on account of its operation of the Vessel and its Tender. *Id.*

Defendant Seychelles responded to Defendant Fisher's cross-claims by filing a Motion to Dismiss for Failure to State a Claim. DE 28. In that Motion, Defendant Seychelles again maintained that Defendant Fisher bareboat chartered the Vessel and its Tender, thereby absolving it of any liability for the accident. *Id.* at 1–2. In particular, Defendant Seychelles avers that, under the Charter Agreement, Defendant Fisher bareboat chartered the Vessel and hired the captain and crew that was alleged to have caused the injuries to Plaintiffs, which means Defendant Fisher, as opposed to it, is solely liable for Plaintiffs' alleged injuries. *Id.* at 2. Defendant Seychelles' arguments have merit.

12

**A. Defendant Fisher's Common Law Indemnity Cross-Claim Should be Dismissed**

To properly plead a common law indemnity claim under Florida law, a plaintiff must allege the following elements:

> (1) the party seeking indemnity must be without fault; (2) the party from whom he is seeking indemnity is wholly at fault; and (3) the party seeking indemnity is liable to the injured party only because it is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity.

*Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199, 1208 (S.D. Fla. 2020); *see, e.g.*, *Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. 5th DCA 2015) ("To plead a cause of action for common law indemnity in Florida, the party seeking indemnity must allege three elements: 1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." (quotation omitted)). Because Defendant Fisher has not sufficiently pled factual allegations to allow the Court to reasonably infer that she is either without fault or that Defendant Seychelles is at fault, Defendant Fisher has failed to plead a plausible indemnity cross-claim.

This analysis—of which party is at fault—hinges on what type of charter Defendant Fisher formed when signing the Charter Agreement. DE 1-5. If Defendant Fisher bareboat chartered the Vessel and its Tender, Defendant Fisher would be liable for Plaintiffs' alleged injuries. *See Walker*, 995 F.2d at 81 ("Because the charter's personnel operate and man the vessel during a demise charter, the charterer has liability for any and all casualties resulting from such operation and therefore provides insurance for such liability."). Conversely, if she time chartered the Vessel and its Tender, Defendant Seychelles would be liable for Plaintiff's injuries. *See Hayes*, 818 F. 2d at

1559 ("A time charterer who has no control over a vessel assumes no liability for negligence of the crew . . . absent an agreement to the contrary.").

To permit the Court to reasonably infer that she time chartered the vessel—that is, to claim that she was without fault for Plaintiffs' alleged injuries—Defendant Fisher first alleged "Tammy Fisher and Exhibit 5 of the Verified Complaint allege that the subject charter was a time charter, and not a bareboat charter." DE 19 at 11 ¶ 8. Seeing as this allegation is both conclusory and a legal conclusion, the Court is not required to accept it as true.

Defendant Fisher alleged next that "[a]t all times relevant hereto Seychelles employed *Triple Net's* captain and crew." *Id.* at 13 ¶ 20. In her response to Defendant Seychelles' Motion to Dismiss, Defendant Fisher explains that this is demonstrated by the Charter Agreement stating: "Captain + 3 for a total of 4." DE 30 at 4 (citing DE 1-5 at 2). The Court does not accept this allegation as true, as it is both conclusory and contradicted by the plain and specific terms of the Charter Agreement.

To provide a more complete picture of what Defendant Fisher is referring to in her response to Defendant Seychelles' Motion, the following is an excerpt of what she was quoting from:

**CHARTER PARTICULARS**

| | | | |
|---|---|---|---|
| Charter Period: | From: 12:00 PM | Hrs on the: | January 26, 2022 |
| | To: 12:00 PM | Hrs on the: | February 2, 2022 |
| Place of Delivery: Fort Lauderdale, FL | | Place of Re-Delivery: Fort Lauderdale, FL | |
| Cruising Area: East Coast Florida and the Florida Keys | | | |
| Maximum Number of Guests Sleeping ( 8 ) and Cruising ( 8 ) on board | | | |
| Crew Consisting of: Captain + 3 for a total of 4 | | | |

DE 1-5 at 2. Crucially, this portion merely notes that there is a crew of four individuals for the charter, but it does not answer the question of what individual or entity provided the crew. However, the next page of the Charter Agreement delivers the answer: "[T]he CHARTERER shall

furnish its own crew and pay expenses and operating costs as provided in Clause 8." *Id.* at 3.[6] Furthermore, the entirety of that paragraph states: "This Agreement constitutes a *demise* charter of the Vessel to the CHARTERER under the maritime law of the United States. Therefore, the OWNER shall deliver and, during the Charter Period, the CHARTERER shall accept, full possession, command, and navigation of the Vessel." *Id.* (emphasis added). And the previously referenced clause, Clause 8, provides "The CHARTERER shall be responsible for the operating costs, including . . . payments as provided in Clause 30, for the entire Charter Period, for the CHARTERER, the CHARTERER's guests, *and any captain and crew retained by the CHARTERER*." *Id.* at 4 (emphasis added).

As such, Defendant Fisher's conclusory allegation that Defendant Seychelles provided the crew for the Vessel is in direct contradiction with the Charter Agreement, which makes explicitly clear that the charter was a bareboat charter for which Defendant Fisher was responsible for providing her own crew. Therefore, the Court does not accept as true Defendant Fisher's allegation that "Seychelles employed *Triple Net's* captain and crew." *See Michel v. NYP Holding, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) ("[T]he Court is not bound to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits . . . ."). And without this allegation, Defendant Fisher cannot make out a claim that she time chartered the Vessel, meaning the Court cannot reasonably infer that she was without liability or that Defendant Seychelles was at fault for Plaintiffs' alleged injuries. Accordingly, Defendant Fisher's first cross-claim for common law indemnity is not plausible on its face and should be dismissed. *See Jacob*,

---

[6] To the extent the Charter Agreement is ambiguous as to who provided the crew in light of these two provisions, the latter, specific provision controls. *See United States v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998) ("When two contract terms conflict, the specific term controls over the general one."); *In re Appliance Now, Inc.*, 568 B.R. 843, 848–49 (M.D. Fla. 2017) ("When provisions in a contract conflict, contract interpretation principles dictate that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." (quotation omitted)).

40 F.4th at 1334 ("Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 544)).[7]

### B. Defendant Fisher's Contribution Cross-Claim Should be Dismissed

In order to plead a contribution claim under admiralty law, there must be an allegation of concurrent fault between two tortfeasors. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."); *see also United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975) ("We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault."). However, as explained above, Defendant Fisher has failed to sufficiently allege that Defendant Seychelles provided the crew for the charter, which means the Court cannot reasonably infer that the charter was a time charter for which Defendant Seychelles would retain liability for any negligence of the crew. As such, Defendant Fisher has failed to allege concurrent fault between her and Defendant Seychelles. Accordingly, Defendant Fisher has not stated a plausible contribution cross-claim against Defendant Seychelles, and her contribution cross-claim should be dismissed. *See Jacob*, 40 F.4th at 1334.

---

[7] For the same reasons discussed in the analysis of the Motion to Dismiss Plaintiffs' Complaint, the Court did not consider the Services Agreement when ruling on Defendant Seychelles' Motion to Dismiss Defendant Fisher's cross-claims; namely, Defendant Fisher's cross-claims also make no explicit or implicit reference to the Services Agreement.

### IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** for Counts 1 and 3 of Plaintiffs' Complaint to be **DISMISSED**, for Counts 2 and 4 to be **DISMISSED WITHOUT PREJUDICE**, and for both of Defendant Fisher's cross-claims to be **DISMISSED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 14th day of February, 2024.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE