

## Vessel Services Agreement

Name of Vessel (the "Vessel"): TRIPLE NET  Length: 92'  Type: Motor Yacht

Port of Registry or U.S. Official Number: 1219930  Flag: USA

Vessel Insurance Limits: Hull: $1,775,000.  Protection & Indemnity: $2,000,000.  Deductible: $177,500.

This Date: January 14, 2022  and Place: Fort Lauderdale, FL

### PARTIES
Contractor (the "CONTRACTOR"): Magnolia Marine LLC  Address: c/o Denison Yachting, 2 Christie's Landing, Newport RI

Charterer (the "CHARTERER"): Tammy Fisher  Address: c/o RJC Yacht Charters 399 SE 18th CT., Ft. Lauderdale, FL 33316

Broker (the "Broker"): RJC Yacht Charters  Address: 399 SE 18th CT., Ft. Lauderdale, FL 33316

Escrow Agent (the "Escrow Agent"): Denison Yachting  Address: 850 NE 3rd Street, Suite 205, Dania Beach, FL 33004

### CHARTER PARTICULARS
Vessel Services Period:  From: 12:00 PM  Hrs on the: January 26, 2022

To: 12:00 PM  Hrs on the: February 2, 2022

Place of Delivery: Fort Lauderdale, FL  Place of Re-Delivery: Fort Lauderdale, FL

Cruising Area: East Coast Florida and the Florida Keys

Maximum Number of Guests Sleeping ( 8 ) and Cruising ( 8 ) on board

Crew Consisting of: Captain + 3 for a total of 4

Exhibit "C"

### FEES
Vessel Services Fee: $8,400.

Advanced Provisioning Allowance (the "APA") (See Clause 4): $12,600. @ 30%

**TO BE PAID AS FOLLOWS**
First installment: $8,400. + $12,600.= $21,000.

Second installment:

To the following Broker's account and deemed paid only when cleared:

### SIGNATURES
In consideration of the premises and of the agreements hereinafter contained, the CONTRACTOR and the CHARTERER agree that the terms above; **Clauses 1-18**, inclusive, below; and any Additional Conditions or attached addenda form part of this Agreement. This Agreement will be binding upon signature by both Parties or transmission by both Parties of signed copies by facsimile or other electronic means, including, without limitation, transmission of signed copies in Portable Document Format (PDF). **SEE ADDITIONAL CONDITIONS CLAUSE 18.**

DocuSigned by: hayden Smith  1/18/2022  DocuSigned by: [signature]  1/17/2022
CONTRACTOR: Magnolia Marine LLC  Date  CHARTERER: Tammy Fisher  Date

DocuSigned by: Deb Pytko  1/18/2022  DocuSigned by: Tracy Gulbranson  1/17/2022
Escrow Agent: Denison Yachting  Date  Broker: RJC Yacht Charters  Date

© Copyright AYCA. Produced by AYCA - The American Yacht Charter Association and adopted by MYBA - The Worldwide Yachting Association. Neither organization will be responsible for any abuse or misrepresentation of this Agreement. Revised June 2020.

## Vessel Services Agreement

**AYCA** — AMERICAN YACHT CHARTER ASSOCIATION

**CLAUSE 1.   Agreement to Retain.**
  A. The CHARTERER hereby retains the CONTRACTOR to manage, operate, and navigate the Vessel during the Vessel Service Period. The CONTRACTOR shall furnish a competent captain (the "Captain"), and crew (the "Crew"), as provided in this Agreement, for the management, operation, and navigation of the Vessel during the Vessel Services Period.
  B. The CHARTERER shall furnish, at the CHARTERER's expense, accommodations and food for the Captain and Crew.
  C. The Captain and Crew shall not use or possess illegal drugs or firearms on board the Vessel and shall conduct themselves in an orderly and sober manner. The Captain and Crew shall be properly uniformed throughout the Vessel Services Period.
  D. Upon the earlier of termination of the Vessel Services Period or payment of the Vessel Services Fee in full, the CONTRACTOR shall cause the Captain and each member of the Crew to execute a written waiver of any rights to, and a release from any maritime lien for, wages earned during or in connection with the Vessel Services Period.

**CLAUSE 2.   Independent Contractor Status.**
  A. The CONTRACTOR and the CHARTERER expressly intend that the CONTRACTOR will perform its obligations hereunder as an independent contractor of the CHARTERER. No employee, agent, servant, captain, or crew member of the CONTRACTOR will be deemed to be the employee, agent, servant, captain, or crew member of the CHARTERER.
  B. The CONTRACTOR shall pay any worker's compensation that may be required under the Jones Act or the general maritime law of the United States for any and all of the CONTRACTOR's employees, agents, servants captain or crew member. The CONTRACTOR shall indemnify and hold the CHARTER harmless against and from any liability for any loss, damage, or expense, including, without limitation, any court costs or attorneys' fees incurred defending against such liability, arising from or in connection with (i) any injury or death of any employee, agent, servant, captain, or crew member of the CONTRACTOR; (ii) any negligent or intentionally wrongful act(s), or violation of any applicable law or regulation by the CONTRACTOR or any of its employees, agents, or servants; (iii) any damage to the Vessel or its equipment or any injury to the person or property or any of its employees, agents, or servants; provided, in all cases, that such loss, damage, or expense does not result from the gross negligence or willful misconduct of the CHARTERER or any of the CHARTERER's guests or invitees.
  C. The CONTRACTOR shall (i) pay all assessments, employment taxes, or contributions, whether state or federal, as to all of its employees, agents, servants, captain, or crew member engaged in the performance of work under the Agreement; (ii) pay any and all gross receipts or assessments of whatever nature or kind levied or assessed as a consequence of the work performed or on the compensation to be paid under this Agreement; and (iii) file any applicable documents required by the laws of any governmental administrative agency.

**CLAUSE 3.   Captain's Authority.**
  A. The Captain will comply with all reasonable orders given to him by the CHARTERER regarding the management, operation, and movement of the Vessel, wind, weather, and other circumstances permitting. The Captain may refuse to comply with any order that the Captain reasonably believes would result in the Vessel's moving to any port or place that would be unsafe or improper for the Vessel.
  B. The Captain may exclude the CHARTERER or any or all of the CHARTERER's guests or invitees from using any particular water sports equipment if, in the Captain's reasonable opinion, they are not licensed if required, not competent, are unsafe, are behaving in an irresponsible manner, or are failing to show due concern for other persons when operating such equipment. The CHARTERER shall comply and shall ensure that the CHARTERER's guests and invitees comply with the Captain's directions regarding use of water sports equipment.
  C. The CHARTERER shall direct the Captain to immediately notify the Broker and Escrow Agent of any breakdowns, disablements, crew changes, accidents, or other significant incidents that occur during the Vessel Services Period.

**CLAUSE 4.   Operating Costs.**
  A. The CHARTERER shall pay the operating costs, including, without limitation, all fuel costs for the Vessel, its tenders, and all watersports equipment, berthing dues and harbor charges, including customs formalities and harbor, pilot and divers' fees; charges for water and electricity taken from shore and any charges for waste disposal; ships' agents' fees, where applicable; national and local taxes, as applicable; food, beverages, personal laundry, and communications costs; hire or purchase costs of    any special equipment placed on board at the CHARTERER's request; and any Additional Payments or any other payments as provided in Clause 18 (collectively, the "Operating Costs")   . If the CONTRACTOR requires the Escrow Agent to pay an APA into the Escrow Agent's account, the Escrow Agent shall disburse the APA, as instructed by the CONTRACTOR, to the Captain for payment of the Operating Costs. The Captain will periodically advise the CHARTERER as to the expenditure of the APA. The Captain will notify the CHARTERER if the balance remaining becomes insufficient in light of current and anticipated expenses and the CHARTERER shall pay directly to the Captain a sum sufficient to maintain an adequate balance. The Captain will exercise due diligence in the expenditure of the APA.
  B. Before the CHARTERER disembarks at the end of the Vessel Services Period, the Captain will present to the CHARTERER a detailed account of monies spent for Operating Costs with as many supporting receipts as possible. Upon the receipt of such account, the CHARTERER shall pay to the Captain the balance of the expenses or the Captain will repay to the CHARTERER any balance overpaid, whichever the case may be.
  C. Payment for special requirements or equipment, shore transport or excursions, or any other expenses not customarily considered part of the Vessel's Operating Costs may be required to be paid via the Escrow Agent's account in advance or to the Captain upon boarding in addition to the APA.
  D. Unless specific alternative arrangements have been made in writing, in advance, all payments for Operating Costs and any other payments for expenses shall be payable in cash. The CHARTERER acknowledges that payment by check, credit card, or other negotiable instrument is not normally acceptable due to the itinerant nature of the Vessel's seasonal schedule and the CHARTERER shall therefore use reasonable efforts to ensure that he has sufficient funds available to cover all reasonably foreseeable expenses or arrange to deposit additional funds with the Escrow Agent.

PLEASE INITIAL:  Contractor: *HS*    Charterer: *TF*    JUNE 2020    2 of 5

**Vessel Services Agreement** 

**CLAUSE 5.   Delay in Delivery; Failure to Deliver; Cancellation by CONTRACTOR.**
A. If the delivery of the Vessel is delayed for any reason, and the Vessel is delivered within forty-eight (48) hours of the commencement of the Vessel Services Period or one-tenth (1/10) of the Vessel Services Period, whichever is shorter, then the CONTRACTOR shall refund to the CHARTERER a pro rata portion of the Vessel Services Fee or, alternatively, the CONTRACTOR and the CHARTERER may agree to extend the Vessel Services Period for a time equal to the delay.
B. If the delivery of the Vessel is delayed for any reason, and the Vessel is not delivered within forty-eight (48) hours of the commencement of the Vessel Services Period or one-tenth (1/10) of the Vessel Services Period, whichever is shorter, then the CHARTERER may terminate this Agreement and the CONTRACTOR shall refund to the CHARTERER the full amount of the Vessel Services Fee or, alternatively, the CHARTERER and the CONTRACTOR may agree to extend the Vessel Services Period for a time equal to the delay.
C. If the CONTRACTOR cancels this Agreement before the commencement of the Vessel Services Period by reason of Force Majeure, then the CONTRACTOR shall refund to the CHARTERER the full amount of the Vessel Services Fee.
D. If the CONTRACTOR cancels this Agreement before the commencement of the Vessel Services Period for any reason other than Force Majeure, then the CONTRACTOR shall refund to the CHARTERER the full amount of the Vessel Services Fee and the CONTRACTOR shall pay to the CHARTERER, as liquidated damages, an amount as follows:
E. If the CONTRACTOR cancels this Agreement thirty (30) days or more before the commencement of the Vessel Services Period, an amount equal to twenty-five percent (25%) of the Vessel Services Fee;
F. If the CONTRACTOR cancels this Agreement more than fourteen (14) days but less than thirty (30) days before the commencement of the Vessel Services Period, an amount equal to thirty-five percent (35%) of the Vessel Services Fee; or if the CONTRACTOR cancels this Agreement fourteen (14) days or less before the commencement of the Vessel Services Period, an amount equal to fifty percent (50%) of the Vessel Services Fee.
G. The Parties agree that the CHARTER's damages as a result of the CONTRACTORS's cancellation or the failure to deliver the Vessel are difficult to estimate as of the date of this Agreement and would be difficult for the CHARTERER to prove. Therefore, the Parties intend for payment of amounts under this Clause 5 to compensate the CHARTERER and not to punish the CONTRACTOR.

**CLAUSE 6.   Delay in Re-Delivery.**
A. If the CHARTERER fails to return the Captain and Crew to the Place of Re-Delivery at the end of the Vessel Services Period by reason of Force Majeure, then the CHARTERER shall return the Captain and Crew as soon as possible but the CHARTERER shall not pay to the CONTRACTOR any additional amount.
B. If the CHARTERER fails to return the Captain and Crew to the Place of Re-Delivery at the end of the Vessel Services Period for any reason other than Force Majeure, then the CHARTERER shall pay to the CONTRACTOR, for each day of delay, an amount equal to the daily rate of the Vessel Services Fee plus forty percent (40%) as liquidated damages. The Parties agree that the CONTRACTOR's damages as a result of the CHARTERER's failure to return the Captain and Crew are difficult to estimate as of the date of this Agreement and would be difficult for the CONTRACTOR to prove. Therefore, the Parties intend for payment of amounts under this Clause 6 to compensate the CONTRACTOR and not to punish the CHARTERER.
C. If the CHARTERER fails to return the Captain and Crew to the Place of Re-Delivery within twenty-four (24) Working Hours of the end of the Vessel Services Period, then the CHARTERER shall, in addition, indemnify and hold the CONTRACTOR harmless against and from any loss, damage, or expense resulting from such failure to return the Captain and Crew.

**CLAUSE 7.   Cancellation by CHARTERER.**
A. If the CHARTERER cancels this Agreement, then the CONTRACTOR may retain any payments made by the CHARTERER as of the date of cancellation and the CHARTERER shall pay to the CONTRACTOR any payments due but unpaid as of the date of cancellation. Notwithstanding the foregoing, the CONTRACTOR shall use reasonable efforts to secure employment of its services for all or part of the Vessel Services Period and the CONTRACTOR shall credit to the CHARTERER any amount earned as a result of such employment during all or part of the Vessel Services Period, less the CONTRACTOR's reasonable expenses in securing such employment.
B. If the Vessel has taken on any provisions before the date of cancellation and such provisions cannot be returned or reused by the CONTRACTOR, then the OWNER shall deduct the cost of such provisions from any sums advanced by the CHARTERER for such expenses and credit to the CHARTERER the balance of any such sums. If the CHARTERER has not advanced any such sums, or if such sums are insufficient to pay such expenses, then the CHARTERER shall pay the OWNER for such expenses, or the CHARTERER shall pay to the OWNER the difference between such expenses and any such sums advanced, as the case may be.
C. If the CHARTERER fails to pay any amount due under this Agreement within seven (7) calendar days' notice in writing from the CONTRACTOR of such failure, then the CONTRACTOR may terminate this Agreement and retain any payments made by the CHARTERER as of the date of termination and the CHARTERER shall pay to the CONTRACTOR any payments due but unpaid as of the date of termination.

**CLAUSE 8.   Breakdown or Disablement.**
A. If during the Vessel Services Period the Vessel becomes disabled by breakdown of machinery, grounding, collision, or other cause so as to prevent the reasonable use of the Vessel by the CHARTERER for a period between twelve (12) and forty-eight (48) consecutive hours or one-tenth (1/10) of the Vessel Services Period, whichever is shorter, then the CONTRACTOR shall refund to the CHARTERER a pro rata portion of the Vessel Services Fee or, alternatively, the CONTRACTOR and the CHARTERER may agree to extend the Vessel Services Period for a time equal to the period of disablement.

**Vessel Services Agreement** 

B. If during the Vessel Services Period the Vessel is disabled for a period of more than forty-eight (48) hours or one-tenth (1/10) of the Vessel Services Period, whichever is shorter, or if the Vessel becomes an actual or constructive total loss, then the CHARTERER may terminate this Agreement and the CONTRACTOR shall refund an amount of the Vessel Services Fee proportional to the time remaining in the Vessel Services Period when the disablement began or the loss occurred.

**CLAUSE 9.  Sale of the Vessel.**
  A. If an agreement is made to sell the Vessel before the commencement of the Vessel Services Period, and the buyer of the Vessel (the "Buyer") is willing and able to perform the charter on substantially the same terms as before, then the CHARTERER and the CONTRACTOR shall arrange to assign this Agreement to another service provider.
  B. If an agreement is made to sell the Vessel before the commencement of the Vessel Services Period, and the Buyer is unwilling or unable to perform the charter on substantially the same terms as before, then this Agreement will terminate with the same consequences, including payment of liquidated damages, as if the CONTRACTOR had cancelled this Agreement under Clause 5.

**CLAUSE 10.  Definitions.**
  A. **Force Majeure.** In this Agreement "Force Majeure" means any cause directly attributable to acts, events, non-happenings, omissions, accidents, or Acts of God beyond the reasonable control of the CHARTERER or the CONTRACTOR, including, without limitation, strikes, lock-outs, or other labor disputes, civil commotion, riots, blockade, invasion, war, fire, explosion, sabotage, storm, collision, grounding, fog, governmental act, or regulation, major mechanical, or electrical breakdown beyond the CONTRACTOR's control and not caused by the CONTRACTOR's negligence. Shipyard delays not attributable to the aforementioned conditions do not constitute Force Majeure. Crew changes do not constitute Force Majeure.
  B. **CONTRACTOR, CHARTERER, Broker, and Escrow Agent.** As used herein, the terms "CONTRACTOR," "CHARTERER," "Broker," and "Escrow Agent" and corresponding pronouns shall be construed to apply whether the CONTRACTOR, CHARTERER, Broker, or Escrow Agent is male or female, corporate or an individual, or singular or plural, as the case may be.
  C. **Working Days and Hours.** A "Working Day" is a day on which the bank of the Escrow Agent named on Page 1 of this Agreement is open for business. A "Working Hour" is an hour between 9 a.m. and 5 p.m., in the time zone where such bank is located, on a Working Day.

**CLAUSE 11.  Law and Arbitration.**
  A. This Agreement will be governed by and construed in accordance with the maritime law of the United States and, to the extent such law fails to supply a rule of decision, the law of the State of Florida regardless of any conflicts-of-law principles that would require the application of any other law. Any dispute arising out of or in connection with this Agreement or any alleged breach hereof will be resolved by binding and confidential arbitration in Fort Lauderdale, Florida, or such other place as the Parties may agree in writing, in accordance with the Rules of the Miami Maritime Arbitration Council (the "MMAC") current when the arbitration proceedings are commenced.
  B. A party wishing to refer a dispute to arbitration shall send notice in writing to the other party appointing its arbitrator and requiring the other party to appoint its arbitrator within seven (7) calendar days of such notice. If the other party fails to appoint an Arbitrator within seven (7) calendar days of such notice, then the first party's arbitrator will act as the sole arbitrator. Otherwise, upon the other party's appointment of the second arbitrator the two arbitrators so appointed will appoint jointly, within seven (7) calendar days, the third arbitrator, who will serve as chairperson of the panel with respect to administrative matters. If the two party arbitrators fail to appoint a third arbitrator within seven (7) calendar days, then either may apply to the MMAC to appoint the third arbitrator. The sole arbitrator or the three arbitrators will resolve the dispute as soon as practicable, but in any case, no more than ninety (90) calendar days after the date on which the first arbitrator was appointed.
  C. The decision of the arbitrator, if a sole arbitrator, or the arbitrators or any two of them, if a panel of three arbitrators, will be final and binding on the Parties and may be enforced by any court of competent jurisdiction. The arbitrator or arbitrators will award costs and expenses of arbitration, including, without limitation, costs of expert witnesses and attorneys' fees, to the prevailing party as provided in Clause 14.
  D. In cases in which the total amount of all claims, including any counterclaims, does not exceed fifty thousand dollars ($50,000) or an equivalent sum in another currency, or if the Parties agree in writing, the arbitration will be conducted in accordance with the Simplified Claims Procedure of the MMAC current when the arbitration proceedings are commenced.
  E. Notwithstanding the above, the Parties may agree in writing at any time to refer any dispute arising out of or in connection with this Agreement to mediation before such person and according to such rules as the Parties may agree.
  F. The Parties shall not bring any proceedings in any other forum or jurisdiction based on any claim arising out of or in connection with this Agreement, except that either party may bring (i) proceedings in any jurisdiction to arrest or attach the property of the other party as security for an arbitration award or (ii) such other proceedings as may be necessary to ratify, enforce, or confirm an arbitration award.
  G. If notice of arbitration proceedings is given by either party, the Escrow Agent, after receiving notification of such proceedings, shall not deal with those monies held by them without the written agreement of both Parties or in accordance with the order of the Arbitrators or their final award. The monies should be held in a designated client account. This account should be interest bearing where banking rules permit. With the written agreement of both Parties, the Escrow Agent may pay the monies into an escrow account jointly controlled by the accredited legal representatives of both Parties pending the result of the arbitration.

**Vessel Services Agreement** 

**CLAUSE 12.  Payment of Vessel Services Fee and APA to CONTRACTOR.**

  A. The Broker shall transfer all funds received as payments under this Agreement, net of commission, to the Escrow Agent. The Escrow Agent shall hold such funds in a designated escrow account in the currency of this Agreement. The Escrow Agent shall pay fifty percent (50%) of the Vessel Services Fee to the CONTRACTOR by bank transfer on the date of commencement of the Vessel Services Period or, if such date is not a Working Day, on the first Working Day thereafter. The Escrow Agent shall pay the APA to the CONTRACTOR or, at the CONTRACTOR's request, directly to the Captain, by bank transfer prior to the embarkation of the Vessel. If the Escrow Agent does not receive written notice of a complaint as provided in Clause 13 before the end of the Vessel Services Period, the Escrow Agent shall pay the balance of the Vessel Services Fee to the CONTRACTOR on the first Working Day after the end of the Vessel Services Period.

  B. If the Escrow Agent receives notice of a complaint as aforesaid, the Escrow Agent shall retain the balance of the Vessel Services Fee for fourteen (14) calendar days after the end of the Vessel Services Period. If the CONTRACTOR and the CHARTERER agree to resolve the complaint within that period, the Escrow Agent shall disburse the balance of the Vessel Services Fee as directed in a writing signed by both the CONTRACTOR and the CHARTERER. If the Escrow Agent receives notice of arbitration from the CONTRACTOR or the CHARTERER as provided in Clause 11 within that period, the Escrow Agent shall hold the balance of the Vessel Services Fee until the arbitration results in an award or the CONTRACTOR and the CHARTERER resolve the matter by agreement, whichever happens first. The Escrow Agent shall immediately thereafter disburse the balance of the Vessel Services Fee as provided in a final arbitration award or an agreement signed by both the CONTRACTOR and the CHARTERER. If the complaint has not been resolved by agreement and neither the CONTRACTOR nor the CHARTERER has given notice of arbitration as provided in Clause 20 within fourteen (14) calendar days of the end of the Vessel Services Period, the Escrow Agent shall pay the balance of the Vessel Services Fee to the CONTRACTOR.

**CLAUSE 13.  Notices.**
Any notice given or required to be given by the CHARTERER or the CONTRACTOR under this Agreement will be communicated in any form of writing and will be deemed to have been properly given as follows: (i) if by mail, when and if dispatched pre-paid and properly addressed by mail or bona fide courier service; (ii) if by fax, when and if transmitted with confirmation; and (iii) if by email, when and if transmitted without any error or nondelivery message. Notice must be given, in the case of the CONTRACTOR, to him or to the Escrow Agent at their respective addresses set forth on Page 1 of this Agreement or, in the case of the CHARTERER, to the CHARTERER's address set forth on Page 1 of this Agreement, to the Broker, or, where appropriate, to the CHARTERER on board the Vessel.

**CLAUSE 14.  Attorney Fees.**
In any arbitration or litigation arising out of or in connection with this Agreement, the prevailing party will be entitled to recover from the non-prevailing party or parties, in addition to any other relief to which the prevailing party may be entitled, reasonable attorneys' fees (including paralegal fees), court costs, and all other expenses incurred in such arbitration or litigation by the prevailing party, even if not taxable as court costs, including, without limitation, all fees, costs, and expenses incident to appeals. For purposes of this Clause 14, a party will be considered the "prevailing party" to the extent that (i) such party initiated the proceedings and substantially obtained the relief it sought, whether by award, judgment, or voluntary agreement; (ii) such party did not initiate the proceedings and did not obtain award or judgment in its favor, but the other party did not substantially obtain the relief it sought; or (iii) such party did not initiate the proceedings and the other party to the proceedings withdrew its claim or action without having substantially obtained the relief it sought. Nothing in this Clause 14 will be construed to affect the mandatory arbitration provisions of Clause 11 of this Agreement.

**CLAUSE 15.  Binding Agreement.**
All of the terms and provisions of this Agreement, whether expressed or not, will be binding upon, inure to the benefit of, and be enforceable by the Parties and their representatives, heirs, and assigns. Any rights given or duties imposed upon the estate of a deceased party will inure to the benefit of, and be binding upon, the fiduciary of such decedent's estate in his fiduciary capacity.

**CLAUSE 16.  Waiver or Modification.**
This Agreement is the entire agreement between the Parties. No waiver or modification of this Agreement will be effective unless in writing and signed by the Parties.

**CLAUSE 17.  Non-Assignment.**
The CONTRACTOR shall not assign this Agreement without the written consent of the CHARTERER.

**CLAUSE 18.  Additional Conditions.**

-Smoking permitted only in areas designated by the Captain. -Fishing is available subject to local laws and acquisition of proper permits. -Satellite TV and Internet connection where geographically available. -Specific dockage/marina requests cannot be guaranteed unless a credit card is provided in advance and availability is noted at that time. -Use of personal watercraft is only permitted subject to the operator having the appropriate license and meeting local operating regulations. Any liability arising from non-compliance is entirely at the operator's risk. It is the Captain's discretion to decline use if guests are unsafe or mishandling. -Any damage caused by any guest to the yacht and/or the yachts equipment shall be paid by the Charterer and may be withheld from the APA until estimates are available. The Charterer has the right to purchase additional insurance for such incidents. -The cost of all wire fees incurred should be at the cost of the party forwarding monies, excluding those related to the transfer of provisioning and delivery monies to the Vessel, which shall be at the cost of the Charterer and deducted from the APA. -Crew gratuity although customary is not mandatory and to the discretion of the Charterer -Whilst every effort will be made to secure berthing in the chosen ports during the cruise neither the Owner or the stakeholder or the captain can be held responsible for the final allocation of any berth. -All parties agree that should arbitration take place it will be held in Broward Country, Florida and by the Miami Maritime Arbitration Council (MMAC).-Covid-19 Addendum attached as part of this Agreement.

**PLEASE INITIAL: Contractor:** _____    **Charterer:** _TF_                        JUNE 2020              5 of 5